**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 21-cv-21714-GOODMAN**
**[CONSENT]**

GUANTANAMERA CIGARS COMPANY,
a Florida corporation,

       Plaintiff,

v.

SMCI HOLDING, INC., et al.,

       Defendants.

_____/

**OMNIBUS ORDER GRANTING IN SMALL PART AND DENYING IN**
**PART CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Guantanamera Cigars Company ("Guantanamera" or "Plaintiff"), manufacturer of a cigar bearing the name "DUO", filed a three-count lawsuit against Defendants SMCI Holding Inc., Swedish Match North America, LLC, Swedish Match USA, Inc. (collectively, "Swedish Match"), Sam's West, Inc. d/b/a/ Sam's Club, and Costco Wholesale Corporation based on the production, sale, and marketing of cigarillos bearing the name "DUOS." [ECF No. 1]. Plaintiff sued Defendants for federal Trademark Infringement, federal Unfair Competition, and common law Trademark Infringement. *Id.*

Defendants filed a two-count Counterclaim against Plaintiff for: (1) Declaratory

Judgment on Trademark Infringement and (2) Declaratory Judgment on Fair Use.[1] [ECF No. 36].

At issue are the parties' competing summary judgment motions. [ECF Nos. 166; 168]. Plaintiff seeks summary judgment in its favor on all claims and for the Court to hold a trial on the issue of damages. [ECF No. 166]. Defendants also seek summary judgment in their favor on all claims. [ECF No. 168]. However, if the Court rejects Defendants' request for summary judgment in their favor on the issue of liability, then they alternatively seek a summary judgment ruling that Plaintiff's damages are zero or *de minimis*. *Id.*

Both parties submitted a response [ECF Nos. 174; 177] and a reply [ECF Nos. 185; 189].

For the reasons outlined below, the Undersigned **denies** Plaintiff's summary judgment motion and **grants in small part** and **denies in part** Defendants' summary judgment motion. By way of summary, there are myriad factual disputes, and the parties repeatedly disagree about the inferences that should arise from the facts upon which they agree. Summary judgment is therefore largely unavailable.

---

[1]    Defendants' first counterclaim included eight counts. [ECF No. 12]. In Defendants' Amended Answer and Counterclaim, they left only these two counts from the original.

## I.      CLAIMS AND INTRODUCTION

Guantanamera has been in the cigar industry since 1997. It produces many different types of cigars, including, relevant to this case, cigars bearing the "DUO" mark as an identifier. Guantanamera began producing, marketing, and selling its "DUO" cigars in 2008 and has been continuously and exclusively using the mark since its inception. On August 4, 2009, Guantanamera registered U.S. Trademark Registration No. 3,664,534 for "DUO" for use in connection with Cigars in International Class 34. The Registration became incontestable in 2016.

In or about August 2020, Swedish Match, a multinational tobacco company, launched a new cigar product bearing the term "DUOS." Before launch, Swedish Match conducted a trademark search for "DUOS" and the results returned Plaintiff's live trademark as the only one including the terms "DUOS" or "DUO."

Guantanamera's "DUO" cigars are considered premium cigars, as defined by the FDA. These cigars are handmade and contain foreign-grown tobacco. In contrast, Swedish Match's White Owl[2]-branded cigarillos do not qualify as premium cigars as

---

[2]      Swedish Match's "DUOS" cigarillos were part of its White Owl branding and are encompassed in this general description of Swedish Match's products. Swedish Match no longer markets its dual, complimentary-flavored, cigarillos as "DUOS" and, instead, now uses the term "Pairs."

defined by the FDA. Its cigarillos are machine-made, mass produced, have non-tobacco flavors added, and sell for as little as 99 cents for a package of two.

Plaintiff alleges that it is the owner of an incontestable trademark for the mark "DUO" for use in connection with Cigars in International Class 34. It claims that Swedish Match and the other Defendants adopted and used "DUOS" as a trademark in connection with the sale of cigars. In Plaintiff's view, the "DUOS" mark is confusingly similar to its own "DUO" mark. In its prayer for relief, Plaintiff seeks compensatory or statutory damages, a temporary and permanent injunction, attorneys' fees and costs, and other remedies that the Court may award.[3]

Defendants' theory is that its "DUOS" mark is descriptive of the fact that its product contains two complimentary-flavored cigarillos (i.e., berries and cream, mango and pineapple, etc.). They contend that Plaintiff's incontestable mark is weak and unworthy of trademark protection. In Defendants' view, despite the similarities in their and Plaintiff's products' names, there is very little, if any, overlap between the two product lines, and they are each sold, marketed, and consumed in noticeably different ways.

---

[3]   In Plaintiff's Rule 26 disclosure, it reveals that it is no longer seeking actual damages and is instead seeking disgorgement, attorneys' fees, and the possible trebling of damages. [ECF No. 169-9].

## II.     SUMMARY OF FACTUAL DISPUTES

Plaintiff and Defendants each submitted an initial statement of material facts. [ECF Nos. 165; 169]. Both parties submitted a response to the opposing party's statement of facts, which also included their own additional facts. [ECF Nos. 173; 179]. Each party then submitted a reply addressing the opposing parties' additional facts. [ECF Nos. 184; 190].

Defendants dispute nearly half of Plaintiff's statement of material facts and Plaintiff disputes more than half of Defendants' additional facts. [ECF Nos. 179; 184]. Plaintiff, in a similar vein, disputes approximately two thirds of Defendants' statement of material facts and Defendants dispute more than 80% of Plaintiff's additional facts [ECF Nos. 173; 190].

Although there are factual disputes precluding a favorable summary judgment ruling for either party, many of the factual disputes are either not disputes or are premised on incorrect legal argument. These "disputes" often challenge the admissibility of the evidence upon which the fact is based, contain inclusion of additional facts for context (which are not actual disputes but, instead, are additional facts), or offer improper legal argument. It is not necessary for the Undersigned's analysis to address the merits of each of Plaintiff's and Defendants' individual disputes. However, Plaintiff's disputes as to facts based on the unsworn reports of Defendants' experts warrant discussion.

Plaintiff challenges some facts because it argues that they are discussed in an

5

expert report then being challenged under *Daubert* and are therefore inappropriate for summary judgment purposes. The Court has already issued its ruling on Plaintiff's three Daubert motions. [ECF No. 194]. Thus, the Undersigned rejects any of Plaintiff's disputes predicated on a Daubert challenge other than those disputes over opinions which were excluded in that Order.

Plaintiff also challenges the propriety of Defendants' reliance on their experts' reports at the summary judgment stage because it claims the reports are unsworn and therefore inadmissible and unsuitable for consideration. In support of this position, Plaintiff cites *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) for the proposition that unsworn expert reports "[do] not meet the requirements of Fed. Rule Civ. Proc. 56(e) and cannot be considered by a district court in ruling on a summary judgment motion." (internal quotations omitted).

Although, at first blush, this ruling seems to support Plaintiff's position, the foundation for the ruling no longer exists because *Carr* was decided before Federal Rule of Civil Procedure 56 was amended in 2010. In *Jones v. Coty, Inc.*, 362 F. Supp. 3d 1182, 1194 n.5 (S.D. Ala. 2018), United States District Court Judge William H. Steele articulated the impact this amendment had on *Carr* and on the holding concerning the exact argument Plaintiff raises here:

> In their [objection to the admissibility of the expert reports], defendants rely
> principally on dicta from *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th

6

Cir. 2003), in which the Eleventh Circuit determined that an expert witness's preliminary report should not be considered on summary judgment because it did not meet the requirements for a summary judgment affidavit as prescribed by Rule 56(e). The *Carr* court reasoned, "Importantly, the alleged expert's report is unsworn. Only 'pleadings, depositions, answers to interrogatories, and admissions *on file*, together with *affidavits*, can be considered by the district court in reviewing a summary judgment motion. Fed. R. Civ. P. 56(c) (emphasis added).'" *Carr*, 338 F.3d at 1273 n.26. But Rule 56(c) was amended in 2010 in a manner that undercuts defendants' reliance on *Carr*. In its present formulation, Rule 56(c) authorizes district courts reviewing summary judgment motions to consider "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, *or other materials*." Rule 56(c)(1)(A), Fed. R. Civ. P. (emphasis added). By all appearances, the unsworn reports of [the experts] constitute "other materials" that may properly be considered on summary judgment so long as they are capable of being reduced to admissible form at trial. This determination works no unfair prejudice on defendants and avoids the elevation of form over substance, particularly given that plaintiffs' expert opinions expressed in their reports can obviously be presented in admissible form at trial by having them testify.

The Undersigned concurs with Judge Steele's reasoning that the 2010 amendment to Rule 56 has rendered the dicta in *Carr* no longer applicable. Accordingly, the Court overrules Plaintiff's objection to the Court's consideration of the facts discussed in Defendants' expert reports on the basis that the reports are unsworn.

## III.    LEGAL FRAMEWORK

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citation omitted). Thus, the Court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party must "show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the movant does so, then "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). The opposing party must proffer more than "a mere scintilla of evidence" to show "that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (internal quotations omitted).

When deciding whether summary judgment is appropriate, the Court views all facts and resolves all doubts in favor of the nonmoving party. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013). However, "if the non-movant's response

consists of nothing 'more than a repetition of his conclusory allegations,' summary judgment is not only proper, but required." *Bentley Motors Corp.*, 976 F. Supp. 2d 1297, 1309 (M.D. Fla. 2013) (citing *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981)).

Even if the parties do not dispute the actual fact, disputes over the inferences that should be drawn from the fact can still preclude summary judgment. *Jeffrey v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995) (summary judgment is improper "if a reasonable fact finder evaluating evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact"); *Alabama Farm Bureau Mut. Cas. Co., Inc. v. American Fid. Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979) ("Summary judgment may be improper, even though the basic facts are undisputed, if the ultimate facts in question are to be inferred from them, and the parties disagree regarding the permissible inferences that can be drawn from the basic facts."). Ultimately, "[i]f reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).

## IV.    ANALYSIS

Plaintiff's three claims all share the same two elements which Plaintiff must establish: "(1) that it had trademark rights in the mark or name at issue and (2) that the

other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1130–31 (11th Cir. 2018) (quoting *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010)); *see FCOA, LLC v. Foremost Title & Escrow Servs., LLC*, 416 F. Supp. 3d 1381, 1388 (S.D. Fla. 2019) ("The tests for common law trademark infringement and unfair competition are the same as the tests for federal trademark infringement and unfair competition."); *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1025–26 and n.14 (11th Cir. 1989) (recognizing that the "elements of common law and statutory trademark infringement are the same" and that a claim of unfair competition premised on an alleged trademark infringement is "practically identical" to an infringement claim).

Neither Plaintiff nor Defendants dispute that Plaintiff "is the owner of incontestable U.S. Trademark Registration No. 3,664,534 for 'DUO' for use in connection with Cigars in International Class 34, registered as of August 4, 2009" and that "[t]he Registration became incontestable in 2016 after Plaintiff filed its Section 8 and 15 Affidavits with the United States Patent and Trademark Office." [ECF Nos. 165, ¶ 1; 179, ¶ 1]. Thus, the parties agree that Plaintiff has a trademark right for the "DUO" mark.

The parties do, however, dispute many of the facts relevant to the Court's analysis of whether Defendants adopted a mark or name that was the same, or confusingly similar to, Plaintiff's mark, such that consumers were likely to confuse the two.

10

In assessing whether there is a dispute of material fact, the Court examines the seven likelihood of confusion factors:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*Tana*, 611 F.3d at 774–75.

The Eleventh Circuit requires the district court to consider all seven factors in its analysis. *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1361 (11th Cir. 2007) ("In this circuit, we are required to consider each of the seven factors."). "[A]pplication of [these] factors entails more than the mechanistic summation of the number of factors on each side; it involves an evaluation of the 'overall balance.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 649 (11th Cir. 2007). Although likelihood of confusion can be decided as a matter of law, it is *generally* a question of fact. *Tana*, 611 F.3d at 775 n.7 ("Although likelihood of confusion is a question of fact, it may be decided as a matter of law.").

If a plaintiff establishes both elements of trademark infringement, the Lanham Act allows recovery of "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The Lanham Act also gives the court

11

the discretion to treble the actual damage award and raise or lower the profit award as necessary to compensate the plaintiff. *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1519 (11th Cir. 1990).

Plaintiff has conceded that it is not claiming that Defendants' alleged trademark infringement caused any actual damages, as it did not submit to Defendants any calculation for actual damages in its Rule 26(a)(1) disclosures. [ECF Nos. 169, ¶ 20; 173, ¶ 20]. Thus, the only monetary forms of relief available are Defendants' profits and the costs of the action. As will be discussed below, many of the factual disputes relevant to the issue of liability also preclude the Undersigned from granting Defendants' request for summary judgment on all but the issue of actual damages.

### a.  Liability

#### i.  Strength of the Mark

The strength of a mark dictates the level of protection it receives. *See John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973 (11th Cir. 1983). In determining the strength of a mark, the Court weighs three factors: (1) the distinctiveness of the mark; (2) whether the mark has been declared as "incontestable" under 15 U.S.C. § 1065(3); and (3) the extent of third-party use of the mark. *See Ocean Bio–Chem, Inc. v. Turner Network Television, Inc.*, 741 F. Supp. 1546, 1554 (S.D. Fla. 1990).

There are four categories of marks: (1) generic, (2) descriptive, (3) suggestive, and

(4) arbitrary. "The categories are based on the relationship between the name and the service or good it describes." *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999).

Plaintiff's mark is "incontestable under 15 U.S.C. section 1065, "meaning that [its] validity is 'presumed and 'cannot be challenged on the ground[] that [it is] merely descriptive, even if the challenger can show that the mark[s] [were] improperly registered initially.'" *Superior Consulting Servs., Inc. v. Shaklee Corp.*, No. 19-10771, 2021 WL 4438518, at *1 (11th Cir. Sept. 28, 2021) (quoting *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 328 (11th Cir. 1989) (some alterations in original)). Thus, Plaintiff's mark should be characterized, at a minimum, as suggestive or descriptive with a secondary meaning. *HBP, Inc. v. Am. Marine Holdings, Inc.*, 290 F. Supp. 2d 1320, 1329 (M.D. Fla. 2003), aff'd sub nom. *HBP, Inc. v. Am. Marine Holding*s, 129 F. App'x 601 (11th Cir. 2005) (citing *Dieter*, 880 F.2d at 329).

Although entitled to some protection, Plaintiff's ownership of an incontestable mark does not end the analysis. *See Frehling Enters., Inc.*, 192 F.3d at 1336 (third-party use must be considered even in assessing the strength of all marks, even incontestable marks); *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 974–75 (11th Cir. 1983); *Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 316 (5th Cir. 1981); *see also Therma–Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 632 (6th Cir. 2002) (holding that the

13

incontestable status of Therma–Scan's trademark was not relevant to the ultimate issue of whether confusion was likely to occur, and mark was not strong because it was descriptive and lacked broad public recognition).

Plaintiff believes its mark is strong and Defendants believe the mark is weak. Plaintiff asks the Court to consider the following illustrative facts in determining that its mark is "arbitrary or at least suggestive":

1.  Guantanamera's owner ("Mr. Montagne") and Swedish Match's 30(b)(6) witness both described the terms "DUO" or "DUOS" as two people singing together, which is the primary definition of the word. [ECF No. 165, ¶ 26].

2.  Defendants conducted a consumer research focus group on the product packaging of the term "DUOS" and only half of the consumers knew before trying the product that there were two different cigars inside the pouch and the ones who knew there were two different flavors attributed their knowledge to the 1 Berry 1 Cream call-out. *Id.* at ¶ 28.

Defendants dispute Plaintiff's first fact on two grounds: (1) its linguistic expert, Robert Leonard, reached a different conclusion regarding the definition of the word; and (2) the 30(b)(6) witness' testimony on this point was a personal opinion, not a binding declaration. Defendants do not dispute the second fact.

In addition to disputing one of Plaintiff's facts, Defendants, in turn, call the Court's

attention to the following facts they claim support a determination that Plaintiff's mark is weak:

1. The tobacco, food, and other industries use the terms "duo" and "duos" frequently to describe aspects of the products and inform customers that the product embodies two of something. [ECF No. 179, ¶ 66].

2. There are more than forty instances across many markets of products using the term "duo" and "duos." *Id*. at ¶ 68.

3. Plaintiff's DUO cigars are "double maduros," which Mr. Montagne claims is a type of cigar that has two or more tobacco leaves. [ECF No. 169, ¶ 29].

Plaintiff disputes all three facts. Plaintiff claims the first two facts are based on expert reports rendered unreliable based on the faulty methodology and irrelevant evidence. Plaintiff also disputes the third fact based on Mr. Montagne's testimony that "DUO" does not mean anything in connection to the cigars.[4]

---

[4]     Plaintiff's dispute should have gone only to part of Defendants' fact. Montagne's deposition testimony indicates that a double manduro refers to the fact that there are multiple leaves in the cigar:

Q: Let's back up. Tell me again what you mean by the word "double maduro."

A: The first meaning, I explain [sic] it previously. It's an idea. It's a topic maybe for the sale where I present myself and my wife. We -- we're, you know -- we are more than 50 years old, and we are mature, you know. We

At bottom, there is evidence supporting a conclusion that the mark is strong but there is also evidence supporting a conclusion that the mark is weak. Even though there are minimal well-taken disputes as to the existence of the material fact, there are many bona fide disputes based on either additional facts or arguments about the reliability of the fact. These are exactly the type of conflicts and challenges meant to be resolved at trial. Thus, the Undersigned finds there are disputes over material facts and the inferences to be derived from those facts, which preclude the Undersigned from assessing this element as a matter of law at the summary judgment stage.

ii.  <u>Similarity of the Infringing Marks</u>

"Similarity of appearance is determined on the basis of the total effect of the designation, rather than on a comparison of individual features." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 260–61 (5th Cir. 1980) (quoting Restatement of Torts § 729, cmt. B (1938)) (internal quotation marks omitted). A court "must also consider the commercial impression created by the mark as a whole." *Id.* at 261 (collecting cases). Stated differently, "[i]n evaluating the similarity of marks, [the court] must consider the overall impression created by the marks, including a comparison of the appearance,

---

have more age, older. The second meaning is the physical where we have more leaves in it, three, four, five; so we can increase the strength.

[ECF No. 165-15, 61:14-23].

sound and meaning of the marks, as well as the manner in which they are displayed." *E. Remy Martin & Co., S.A. v. Shaw-Ross Intern. Imports, Inc.*, 756 F.2d 1525, 1531 (11th Cir. 1985).

Both parties included pictures of the opposing party's product in their statement of facts. [ECF Nos. 165, ¶¶ 9, 13, 15 (containing pictures of Defendants' DUOS cigarillos in an unopened box, as displayed after the box is opened, and as a single pack); 169, ¶ 32 (containing pictures of Plaintiff's "DUO" cigar as a single cigar, a pack of five, and a box of cigars)].

The question for the Court, however, is not simply whether the characteristics of the mark are similar when the two products are compared side-by-side. Rather, the Court must examine how the marks are encountered in the marketplace. *See also Zaletel v. Prisma Labs, Inc.*, 2017 WL 877302, at *4 (D. Del. Mar. 6, 2017) ("Because the test is likelihood of confusion by consumers in the marketplace, the degree of similarity of the marks is assessed by looking at the marks as encountered by consumers in the marketplace."); *Isle of Capri Casinos, Inc. v. Flynt*, 2016 WL 6495380, at *5 (C.D. Cal. Nov. 1, 2016) ("To address the similarity of the marks, a court considers the 'sight, sound, and meaning' of the marks, taking into consideration how the marks are encountered in the marketplace."); *You Fit, Inc. v. Pleasanton Fitness*, LLC, 2013 WL 521784, at *5 (M.D. Fla. Feb. 11, 2013) ("In deciding similarity, the court must 'not look just at the typewritten and aural similarity of the

marks, but how they are presented in the marketplace.'") (quoting *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 962 (2d Cir. 1996)).

Both sides dispute the opposing party's personal characterization of the font, logos, and overall appearance of their product. Absent from either side's statement of facts, however, is any detailed information about how their product is displayed in the actual marketplace. For example, neither Plaintiff nor Defendants make it clear how Plaintiff's product is displayed in the store or which of the DUO images appear on its website. Likewise, neither Defendants nor Plaintiff sufficiently explain how Defendants' products are encountered when customers are evaluating and purchasing the product.

As a result, due to the disputes between the parties and a lack of salient information on this element, the Undersigned cannot determine what weight, if any, to assess for either side at the summary judgment stage.

### iii.   Similarity Between the Two Products

The question of whether there is a similarity between products requires a "determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." *Caliber Automotive Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 934 (11th Cir. 2010).

Here, neither side disputes the composition of the other's product. Both sides

agree that Plaintiff's product qualifies as a "premium cigar" under the Food and Drug Administration's ("FDA") definition. And both sides also agree that Defendants' product is a machine-made, mass-produced cigar, sometimes referred to as a cigarillo.

Thus, only legal disputes remain between the parties on this element. While it would be possible for the Undersigned to determine this issue now as a matter of law, I decline to do so because it would not have an impact on the ruling or my consideration of the other likelihood of confusion factors in which there are factual disputes.

iv.   <u>Similarity of the Sales Methods Used by the Holders of the Mark</u>

The similarity-of-actual-sales-methods factor contemplates the similarity of the parties' customer bases. *Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 983 F.3d 1273, 1284 (11th Cir. 2020), cert. denied, 142 S. Ct. 74, 211 L. Ed. 2d 12 (2021). According to the Eleventh Circuit,

> "Dissimilarities between the retail outlets for and the predominant customers of plaintiff's and defendant's goods lessen the possibility of confusion, mistake, or deception." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir.), cert. denied, 449 U.S. 899, 101 S. Ct. 268, 66 L.Ed.2d 129 (1980). This factor takes into consideration where, how, and to whom the parties' products are sold. *See* 4 McCarthy, supra, § 24:51, at 24–71. Direct competition between the parties is not required for this factor to weigh in favor of a likelihood of confusion, *see Jaguar Cars Ltd. v. Skandrani*, 771 F. Supp. 1178, 1184 (S.D. Fla. 1991), though evidence that the products are sold in the same stores is certainly strong. The parties' outlets and customer bases need not be identical, but some degree of overlap should be present.

*Frehling Enters., Inc*, 192 F.3d at 1339.

19

On this point, Plaintiff and Defendants dispute the evidence the Court should consider and the inferences that should arise from that evidence. For example, Plaintiff highlights testimony from Mr. Montagne:

> The customer base of GCC's 'DUO' cigars is a broad mix of adult men and women of all ages. GCC sells its 'DUO' cigars at wholesale to specialty cigar retailers, online to any adult of smoking age who wishes to purchase 'DUO' cigars and is allowed to do so under their local state laws, to cigar enthusiast[s] who enjoy premium cigars, to tourists visiting my retail shop and café on 'Calle Ocho,' and to impulse buyers with little or no sophisticated knowledge of the different varieties of cigars.

[ECF No. 165-1, ¶ 22].

In contrast, Defendants focus on the following facts:

1. Over 98% of Swedish Match's WHITE OWL branded mass-market, machine-made cigarillos were sold in convenience stores, or other discount retail stores and the other 2% were sold online.

2. Swedish Match's mass-market cigars are sold through approximately 150,000 retail locations, including gas stations, such as Circle K, 7-Eleven, Quik Stop, and QuickTrip.

[ECF No. 169, ¶¶ 46-47].

The parties also dispute the weight that should be given to the following facts that arise from Defendants' witnesses' testimony:

1. Premium cigars are specifically marketed to a discriminating purchaser and are sold in tobacco specialty stores with humidity control environments.

2. Cigar afficionados who appreciate and seek out "premium" cigars tend to be highly knowledgeable about the marketplace and exercise considerable purchasing care.

3. A further indication of the care taken by these "premium cigar customers is the fact that they are often assisted by cigar experts who advise and provide information about the products.

4. Consumers of mass-market cigarillos are extremely brand loyal (studies show that 83% of cigarillo smokers had a regular brand).

[ECF No. 169, ¶¶ 50, 52-53, 55].

Defendants rely on this evidence heavily in their request for summary judgment.

Plaintiff disputes this evidence, though, stating:

> Brian Love testified that it is not contested that premium cigars and machine-made cigarillos are sold in the same retail outlets. (D.E. 91 at 109:20 – 110:9). There is also testimony that premium cigars and machine-made cigars are sold to the same consumers, who sometimes purchase premium cigars and machine[-]made cigars in a single purchase. (D.E. 165-1, at ¶18); and (D.E. 165-20, at 6:1-2, 12:4-6, & 14:7-11); see also (D.E. 91 at 110:2-9 & 115:14- 116:16) (identifying companies that sell "DUOS" and premium cigars or otherwise circumstances in which premium cigars and machine[-]made cigars are sold through similar channels of trade). Defendants also testified that premium cigars are sold at convenience stores. (D.E. 91, at p. 116:1-17; & D.E. 165-6, at 28:10-13).

[ECF No. 173, ¶ 50].[5]

Essentially, Defendants prefer that the Court base its ruling on usual industry

practices, while Plaintiff has the view that the Court should instead rely on specific

instances at its business location. These types of disputes are inappropriate to resolve at

---

[5]     Although this dispute is filed only in reference to paragraph 50 of Defendants' statement of material facts, in the Undersigned's view, the allegations in the dispute also apply to Defendants' material facts in paragraphs 52, 53, and 55.

the summary judgment stage before the parties have had an opportunity to challenge the evidence contrary to their position. Phrased differently, there are disputes over the material facts and the appropriate inferences to be drawn from those facts, and summary judgment is therefore unavailable on this issue.

v.  Similarity of Advertising

A plaintiff need not show that a defendant's advertising methods are identical: "the standard is whether there is likely to be significant enough overlap in the [medium] in which the parties advertise that a possibility of confusion could result." *Frehling Enters., Inc.*, 192 F.3d at 1340. By way of example, if both entities advertise on the same local radio station, there could be a finding of overlap. *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat. Univ., Inc.*, 91 F. Supp. 3d 1265, 1281 (S.D. Fla. 2015), aff'd sub nom. *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242 (11th Cir. 2016) ("Both FIU and FNU have advertised on the same local radio station, WLRN. The Court finds that this is sufficient to create a likelihood that the same consumers would be exposed to both marks.").

In contrast, two separate internet websites, although each found on the internet, could weigh in favor of a finding that consumers would understand the entities to be distinct enterprises. *See Tana*, 611 F.3d at 778 (finding that the parties' websites "would dispel rather than cause confusion . . . because the websites are separate and distinct, suggesting two completely unrelated business entities").

22

The disputes on this element are, again, over the inferences that should be drawn from each party's statement of facts. Among others, Defendants' facts include the following claims:

1. Mass-market brands do not market, promote, or advertise through publications such as Cigar Afficionado, rather their promotional budgets are used on in-store displays, and to a lesser extent, general magazine advertising that emphasizes the price, value and convenience of these promotions.

2. Tobacco companies, and specifically cigar companies, usually separate brands by specific target market segments and associated targeted customers, which means that rarely, if ever, does a premium cigar brand use the same brand for its mass-market machine-made cigars.

[ECF No. 169, ¶¶ 62-63].

As an illustration, Plaintiff puts forth the following facts on this issue:

1. Plaintiff's "DUO" cigars are sold online and through brick-and-mortar stores (to which Plaintiff sells the products at wholesale) that sell both "premium" cigars and machine-made cigarillos.

2. Plaintiff's "DUO" cigars and Defendants' "DUOS" cigars are both advertised with point-of-sale displays.

3. Consumers of Defendants' "DUOS" cigarillos can purchase "DUOS" cigarillos and premium cigars from a single source and in a single purchase.

4. Plaintiff and Swedish Match attend tobacco industry tradeshows.

[ECF No. 165, ¶¶ 36, 39, 40, 41, 44].

Plaintiff disputes the reliability of the expert whose testimony serves as the

foundation for Defendants' facts. Likewise, Defendants challenge the value of Plaintiff's facts and the lack of evidence supporting a finding that they are germane to the issue on advertising overlap.

An illustration of the type of dispute Defendants raise can be seen with Plaintiff's focus on a Google search conducted by its counsel wherein both Plaintiff's and Defendants' products appeared on the first page of results for the search "DUOS cigars." [ECF No. 165, ¶ 55]. Defendants believe this fact is of little evidentiary value because the actual testimony shows what only one internet-searcher viewed, not what the masses would view if a similar search were conducted. [ECF No. 179, ¶ 55].

As with many of the other factual disputes by the parties, these issues are more appropriate for resolution during a trial. At the summary judgment stage, "all inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). Thus, in the context of assessing Plaintiff's summary judgment motion, I must discount Plaintiff's inferences and favor Defendants' and, in the context of assessing Defendants' summary judgment motion, I must do the opposite. Accordingly, a proper allocation of the inferences under the summary judgment standard results in an unfavorable ruling for whichever party is the movant. In other words, a *denial* of the summary judgment motion.

vi.   <u>Intent of the Alleged Infringer</u>

24

Intent can be a powerful factor in a trademark dispute. If a defendant purposefully used the same or confusingly similar mark as the plaintiff "with the intent of deriving benefit from the reputation" of the plaintiff, then "'that fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Wreal, LLC v. Amazon.com, Inc.*, No. 14-21385-CIV, 2015 WL 12550912, at *6 (S.D. Fla. Aug. 31, 2015), aff'd, 840 F.3d 1244 (11th Cir. 2016) (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (11th Cir. 1980) (quoting Restatement of Torts § 729, cmt. f (1938))). Improper intent or willful blindness -- even without specific intent to trade off of good will or reputation -- in conjunction with the other elements can also support a finding that there is a likelihood of confusion. *Frehling Enters., Inc.*, 192 F.3d at 1340 (agreeing with district court that the defendant's "behavior display[ed] an improper intent through intentional blindness and, given the demonstrated prevalence of this improper intent," the factor fell in favor of the plaintiff).

Here, Defendants offer their intent as a statement of fact, claiming that "[Swedish Match] selected the word "duos" because it fairly and accurately described the fact that there were two flavored cigarillos in the WHITE OWL branded packets" and "Swedish Match did not even know of the existence of Plaintiff's mark until after it had already decided to use "duos" on product packaging." [ECF No. 189]; *cf.* [ECF No. 169, ¶¶ 17, 24, 65]. Defendants note the small size of Plaintiff's brand and claim it would be incredulous

to think Defendants wanted to trade off of Plaintiff's goodwill or to derive benefit from Plaintiff's reputation.

Plaintiff argues that Defendants' actions do not support their claimed intent. Plaintiff calls attention to the undisputed facts that Defendants were aware of Plaintiff's trademark when deciding to move forward with their product launch, continued to sell the infringing products after receiving Plaintiff's cease and desist letter, and referred to the "DUOS" mark as a brand or name in internal emails. All of this, Plaintiff avers, means that the Court should grant summary judgment in its favor.

This is a material factual dispute. Defendants describe their motivation and actions, and Plaintiff says Defendants' contentions are incorrect. Resolving this type of dispute cannot be done at the summary judgment stage -- it requires a trial. *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) ("As a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial."); *Rogers v. Evans*, 792 F.2d 1052, (11th Cir.1986) ( "Ordinarily, summary judgment should not be granted in cases where motive, intent, subjective feelings, and reactions are to be searched.").

vii.   Existence of actual confusion

The parties agree that Plaintiff has no evidence of actual confusion. The disagreement is only on the weight that should be afforded to this fact. As Plaintiff notes,

however, "[t]he law is well settled in this circuit that evidence of actual confusion between trademarks is not necessary to a finding of likelihood of confusion, although it is the best such evidence." *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985). What that means in this context is that, although the evidence could assist Plaintiff's case, the absence of this evidence does not doom its claims.

Given the factual disputes relevant to the other elements, a lack of evidence or dispute on this element does not warrant summary judgment in favor of either party.

> viii.   <u>Conclusion</u>

As outlined above, there are significant disputes over both the facts in the case and the appropriate inferences the Court should draw from those facts. These disputes affect the Court's consideration of nearly every element of the likelihood of confusion analysis. Because of this, the Undersigned denies both Plaintiff's and Defendants' requests for summary judgment on liability.

> **b. Damages**

Defendants seek alternative relief on the issue of damages, alleging they are entitled to summary judgment regarding any claim for actual damages and disgorgement of profits. There are three types of damages available to Plaintiff:

> Under the Lanham Act, a plaintiff whose trademark rights have been violated is entitled to recover "(1) defendant's profits, (2) any damages

27

sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The Lanham Act also gives the court the discretion to treble the actual damage award and raise or lower the profit award as necessary to compensate the plaintiff.

*Howard Johnson Co.*, 892 F.2d at 1519.

### i. Actual Damages

Defendants argue that Plaintiff's Rule 26 disclosure did not contain an actual damages estimate and that Plaintiff has conceded that it is seeking only disgorgement of Defendants' profits. Plaintiff admits as much in its response to Defendants' statement of material facts, [ECF No. 173, ¶ 20]. Plaintiff also did not argue against this request in its response to Defendants' summary judgment motion. [ECF No. 174].

A party is deemed to have waived an argument when it offers no response to an argument made by its opponent. S.D. Fla. L.R. 7.1(c) (failure to respond to a motion or argument "may be deemed sufficient cause for granting the motion by default"); *Grant v. Miami-Dade Cty.*, No. 13-22008-CIV, 2014 WL 7928394, at *9 (S.D. Fla. Dec. 11, 2014) ("Where a plaintiff fails to respond to an argument in a motion for summary judgment, he waives the argument.").

Accordingly, the Undersigned **grants** Defendants' summary judgment request on actual damages.

### ii. Disgorgement

Defendants cite *Howard Johnson Co.* for the principle that there are "three

recognized bases for showing entitlement to any disgorgement of profits." [ECF No. 189] A review of *Howard* and the cases it cites establishes the following principles:

"An accounting should be granted if the defendant is unjustly enriched, if the plaintiff sustained damages from the infringement, or if an accounting is necessary to deter a willful infringer from doing so again." *W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 664 (2d Cir. 1970). "In trademark infringement cases, the factors warranting profit awards are stated in the disjunctive." *Howard*, 892 F.2d at 1521 (11th Cir. 1990) (citing *Maltina*, 613 F.2d at 585; *W.E. Bassett Co.*, 435 F.2d at 664). Therefore, a court can base a profit award upon a finding of any one of these factors. *Id*.

Defendants take the position that Plaintiff is wholly unable to establish actual damages, unjust enrichment, or willful infringement.

Plaintiff claims Defendants' argument that a trademark owner must establish willfulness is unsupported by the law because the Supreme Court held in *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 206 L. Ed. 2d 672 (2020) that a plaintiff is not *required* to prove a *mens rea* to be entitled to disgorgement of an infringing defendant's products. In *Romag Fasteners, Inc.*, the Supreme Court stated "we do not doubt that a trademark defendant's mental state is a highly important *consideration* in determining whether an award of profits is appropriate. But acknowledging that much is a far cry from insisting on the inflexible *precondition* to recovery [the defendant] advances." *Id.* at

1497 (emphasis added).

Defendants offer no case law refuting this clear indication from the Supreme Court that it was rejecting the *Howard* Court's rationale in requiring willfulness be proven as a precondition to an award. Certainly, intent is relevant to the amount awarded, but it is not *necessary* for entitlement. *Id.* (discussing how the legislature's decision to include a *mens rea* requirement in other sections of the Lanham Act while not including it in § 1117(a)'s requirements is a clear indicator that the legislature did not intend for a willfulness finding to be a prerequisite to recovery).

Defendants also argue that Plaintiff is unable to prove that any of their profits are attributable to their use of the "DUOS" mark. However, as Plaintiff correctly notes:

> [it] need only prove gross sales and then it is up to the infringer to prove which, if any, of those sales were not attributable to the wrongful act, and deductible costs and expenses to arrive at net profits." J. Thomas McCarthy, Trademarks and Unfair Competition § 30:66 (4th ed. 1998). Any doubts about the actual amount of gross sales or profits will be resolved against the infringing party. *Id.* (citing *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir. 1985)).

*Nutrivida, Inc. v. Inmuno Vital, Inc.*, 46 F. Supp. 2d 1310, 1315–16 (S.D. Fla. 1998).

Defendants contend that when they transitioned from "DUOS" to "Pairs," their sales remained the same, a fact which they say demonstrates that none of their profits were attributable to the DUOS mark. Plaintiff argues in response that Defendants "made a concerted effort to educate consumers that 'DUOS new name is PAIRS' and "the final

edition of infringing 'DUOS' product included promotional content on the back informing customers that the next edition would be dark chocolate and white chocolate[,]" which was one of the immediate PAIRS options.

§ 1117(a) states that "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a) Indeed, the law recognizes that "[t]here may well be a windfall to the trademark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 207 (1942).

Because the principles of equity are implicated, *see* 15 U.S.C. § 1117(a) (limiting available damages "subject to the principles of equity"), many of the disputed facts and inferences relevant to the Court's liability determination will also be relevant to the Court's damages determination. Moreover, Plaintiff and Defendants present disputed evidence on this very issue. Accordingly, the Undersigned **denies** Defendants' request for summary judgment on Plaintiff's disgorgement damages theory.


## V.     CONCLUSION

Based on the foregoing, the Undersigned Orders as follows:

(1) Plaintiff's Motion for Summary Judgment is **denied**;

(2) Defendants' Motion for Summary Judgment is **granted in small part** on the

issue of actual damages. Defendants' motion is **denied** in all other respects.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on April 29, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All Counsel of Record