UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-cv-21714-GOODMAN
**[CONSENT]**

GUANTANAMERA CIGARS COMPANY,
a Florida corporation,

    Plaintiff,

v.

SMCI HOLDING, INC., et al.,

    Defendants.
_____/

## OMNIBUS ORDER ON THE PARTIES' MOTIONS IN LIMINE

Plaintiff Guantanamera Cigars Company ("Guantanamera" or "Plaintiff"), manufacturer of a cigar bearing the name "DUO", filed a three-count lawsuit against Defendants SMCI Holding Inc., Swedish Match North America, LLC, Swedish Match USA, Inc. (collectively, "Swedish Match"), Sam's West, Inc. d/b/a/ Sam's Club, and Costco Wholesale Corporation based on the production, sale, and marketing of cigarillos bearing the name "DUOS." [ECF No. 1]. Plaintiff sued Defendants for federal Trademark Infringement, federal Unfair Competition, and common law Trademark Infringement. *Id*.

Defendants filed a two-count Counterclaim against Plaintiff for: (1) Declaratory

Judgment on Trademark Infringement and (2) Declaratory Judgment on Fair Use.[1] [ECF No. 36].

Both parties filed motions for summary judgment which were denied in all respects except as to Defendants' request for summary judgment on the issue of actual damages. [ECF No. 195].

Currently at issue are the parties' motions in limine. [ECF Nos. 197-98]. Each side filed a response [ECF Nos. 201; 203] and Plaintiff also filed a notice of supplemental authority [ECF No. 200]. Neither side filed a reply and the time to do so has passed.

For the reasons discussed beneath, the Undersigned **denies** Plaintiff's Motion in Limine and **grants in part** Defendants' Motion in Limine.

I.    **Plaintiff's Motion in Limine**

Plaintiff seeks to prohibit Defendants from introducing any evidence concerning "third-party use of a mark on goods other than tobacco products," "third-party use of 'duo' or 'duos' in connection with goods that are not in lawful use in United States Commerce," and "third-party use of 'duo' or 'duos' that Plaintiff has successfully challenged." [ECF No. 197]. According to Plaintiff, this evidence is "not relevant to the issues in this case and should be excluded." *Id*.

---

[1] Defendants' first counterclaim included eight counts. [ECF No. 12]. In Defendants' Amended Answer and Counterclaim, they left only these two counts from the original.

2

When seeking to exclude evidence in limine, "[t]he movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). Plaintiff contends that its desired in limine relief is distinct from that requested in its earlier *Daubert* motions and that it rests on different grounds than those previously raised (unsuccessfully). But many of the arguments are extremely similar and, at times, identical. *Compare* [ECF Nos. 164; 167] *with* [ECF No. 197]. In its *Daubert* motions, Plaintiff sought to exclude expert opinions for relying on irrelevant evidence, and its request was denied. [ECF No. 194]. Now, it seeks to exclude that same evidence as irrelevant.

As Defendants note in their response, "[a] court should exclude evidence in limine only when it is clearly inadmissible on all potential grounds." [ECF No. 203 (citing *Incardone v. Royal Caribbean [sic] Cruises, Ltd.*, No. 16-20924-CIV, 2019 WL 2709810, at *4 (S.D. Fla. June 28, 2019)]. Notably, here, the Undersigned has already permitted Defendants' experts to offer opinions based, in part, on evidence for which Plaintiff is currently seeking wholesale exclusion. If Plaintiff's request were granted -- and Defendants' experts were no longer permitted to mention the evidence upon which they relied -- then it would render much of the Undersigned's previous *Daubert* ruling meaningless.

Moreover, much of the legal authority upon which Plaintiff relies in support of its

3

arguments speaks only to the weight this type of evidence ought to be afforded, not to the evidence's *admissibility*.

### a. Third-Party Use of DUO or DUOS by Unrelated Business

Plaintiff cites multiple cases in support of its argument that "[u]se of the same or similar marks by third parties in unrelated businesses does not diminish the distinctiveness of a mark in a particular field."[2] However, none of these cases speak to the admissibility of this type of evidence. Instead, they address only the weight the evidence ought to be afforded in specific circumstances.

For example, in *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1165 (11th Cir. 1982), a case upon which Plaintiff relies, the Eleventh Circuit merely noted that "[t]he third-party users mentioned in this case do not significantly diminish the strength of the Safeway mark." The Court's use of the word "significantly" indicates that although it did not consider the evidence powerful, it considered it marginally relevant and, therefore, admissible.

---

[2] Plaintiff also claims that Defendants "effectively conced[ed]" this issue during an evidentiary hearing, when counsel stated, "[f]or example, there are products, candy bar products that use the term duos on their packaging. I do not know to what issue it would be germane in this case had the inside counsel been aware of a candy bar's use of duos prior to launching." [ECF No. 200]. This alleged concession shares little in common with the evidence and arguments Plaintiff currently seeks to exclude. The relevance of someone's knowledge of a third-party product before launching their own product is completely different than the relevance of the third-party product's existence.

4

Another one of Plaintiff's cases, *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259 (5th Cir. 1980), undercuts its argument even further. In *Amstar Corp.*, the Fifth Circuit highlighted the potential relevance of a mark's use on dissimilar products via the following analogy: "If the owner of KODAK should permit its use by others on washing powders, shoes, candy bars, or cosmetics, or if The Coca-Cola Company should permit COCA-COLA or COKE to be used for rain coats, cigarette lighters, golf balls, or jewelry not of its manufacture, it would not take long for even these giants in the trademark world to be reduced to pigmy size." *Id.* at 259 (internal citation omitted).

At bottom, although the probative value of this evidence may sometimes be minimal, Plaintiff has not met its burden to establish that the evidence is irrelevant or inadmissible for *any* purpose.

As a fallback argument, Plaintiff urges that "evidence of third-party use is only relevant if the Defendants also put on evidence that the third party use significantly diminishes the public's perception that the mark identifies services connected with the owner." [ECF No. 197]. In support of this argument, Plaintiff cites *Breakers of Palm Beach, Inc. v. Int'l Beach Hotel Dev., Inc.*, 824 F. Supp. 1576 (S.D. Fla. 1993). Just as with the other citations, Plaintiff takes a narrow principle, includes a partial quotation, and then argues for a sweeping rule of inadmissibility. The full *Breakers* discussion on the issue quickly reveals that the Court did not establish the prerequisite Plaintiff seeks to impose and,

5

instead, spoke only to the manner in which this type of evidence should be considered:

> Defendant presented evidence of twelve other properties in Florida, and several out-of-state properties, which use the terms "the Breakers" or "breakers" as part of their business names. However, unauthorized use of a mark does not necessarily render a mark weak. The proper inquiry is whether the third party use significantly diminishes the public's perception that the mark identifies services connected with the owner. Defendant argues that twelve unauthorized uses within the state constitute "extensive" third party use; however, they do not suffice to diminish Plaintiff's mark. Cases which have found third party use to be a significant factor have involved substantially higher numbers than those involved in this case. *Sun Banks of Florida, Inc., v. Sun Federal Savings & Loan Ass'n.*, 651 F.2d 311, 316 (5th Cir. 1981) (4400 users); [*Amstar Corp.*, 615 F.2d at 259] (72 users)

*Id.* at 1583.

Because Plaintiff has not met its burden to show that this evidence is inadmissible for any purpose or that there are any pre-requisites Defendants must meet before introducing this type of evidence, the Undersigned **denies** Plaintiff's request.

      b. <u>Third-Party Use of DUO or DUOS by Products not Lawfully Sold in the United States</u>

Plaintiff's second argument suffers from the same flaws. It cites only one case for its claim that international products are not relevant and must be excluded. In Plaintiff's view, "foreign trademark use does not affect U.S. trademark rights." [ECF No. 197]. For this proposition, Plaintiff relies on *FN Herstal, S.A. v. Clyde Armory, Inc.*, 123 F. Supp. 3d 1356, 1362 (M.D. Ga. 2015), aff'd sub nom. *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071 (11th Cir. 2016).

In a parenthetical, Plaintiff attributes the following principle of law to the *FN* case: "Noting that '[i]t is well settled that foreign use is ineffectual to create trademark rights in the United States' in granting a motion in limine excluding foreign use of a trademark." The basis for the *FN* Court's ruling, however, is on grounds completely different than those which Plaintiff raises in its motion:

> FN also presented evidence that it displayed SCAR firearms at tradeshows outside the United States, such as the 2006 Eurosatory trade show held every other year in Paris, France. "It is well settled that foreign use is ineffectual to create trademark rights in the United States." *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir. 1985). Accordingly, the Court will not consider FN's displays of SCAR firearms outside the United States in determining priority of trademark rights in this case. In that regard, Clyde Armory's Motion in Limine [Doc. 115] regarding FN's foreign use of the SCAR mark is GRANTED as to these international trade shows.

123 F. Supp. 3d at 1362, n.14.

The full discussion reveals that the motion was granted on limited grounds -- determining *priority* of trademark rights. Plaintiff's other cases discussing illegal goods, likewise, only do so in the context of registration and priority. Because Plaintiff has not established that these principles apply equally in determining the strength of Plaintiff's mark, its request to exclude this evidence is **denied**.

    c. <u>Third-Party Use of DUO or DUOS on Products Plaintiff has Successfully Challenged</u>

Plaintiff anticipates Defendants will rely on evidence of products using the term

7

DUO or DUOS against which Plaintiff has successfully enforced its rights and argues that this evidence should be excluded. Although Plaintiff wants to exclude this evidence, it still wants to be permitted to introduce evidence of its prior enforcement actions. Plaintiff's caveat undercuts its argument that the evidence is inadmissible for any purpose because it contends that it is admissible for its own desired purpose. If the Undersigned were to grant Plaintiff's request, then it would hamstring Defendant from introducing any evidence to counter allegations that Plaintiff might raise in its case-in-chief. In addition to suffering from the logical inconsistency flagged above, Plaintiff's argument also suffers from the same flaw in legal analysis as its two earlier arguments.

Plaintiff avers that "evidence of third-party use when the trademark holder has sought to enforce its rights does not weaken the trademark." It cites *Tancogne v. Tomjai Enterprises Corp.*, 408 F. Supp. 2d 1237, 1246 (S.D. Fla. 2005) as support. However, the *Tancogne* Court does not go this far in its discussion on the issue, stating:

> Another consideration in determining the strength of the mark is third-party use. [*Sun Banks of Fla., Inc.*, 651 F.2d at 315–16]. Extensive third-party use of a term weakens the mark. *Id.;* [*Amstar Corp.*, 615 F.2d at 260]. Defendants have introduced a number of other competing products with purportedly similar names to show third-party use, as well as to show that the individual terms in Plaintiffs' marks are commonly used in the names of competing products. They include "Derma White," "Dermo White," "Skin White," "Body White," "Fairskin," "Naturally Fair," "Fair & Beautiful," "Fair & Lovely," "Sure White," "Maxi Light," and "Fair and Balance." None of these competing products uses the combination trademark term "Fair & White," or "Paris Fair & White," and therefore do not qualify as third-party use. In addition, Plaintiffs have shown that they,

8

> themselves, own one of those products and have taken action to enjoin the usage of those that closely resemble Plaintiffs' mark.

*Id.* at 1246.

The *Tacogne* Court found that the third-party use evidence was not valuable because it did "not qualify as third-party use." Its discussion beyond that specific finding is *dicta* and fails to substantiate Plaintiff's argument on the issue. Further, the *Tacogne* Court's discussion surrounds only the *weight* afforded to its case-specific evidence and offers no guidance as to admissibility of this type of evidence. For these reasons, Plaintiff's request is **denied**.

### d. Conclusion

This burden to exclude evidence in a bench trial is higher than in a jury trial because "[t]he rationale underlying pre-trial motions in limine does not apply in a bench trial, where it is presumed the judge will disregard inadmissible evidence and rely only on competent evidence. In fact, courts are advised to deny motions in limine in non-jury cases." *Singh v. Caribbean Airlines Ltd.*, No. 13-20639, 2014 WL 4101544, at *1 (S.D. Fla. Jan. 28, 2014) (citing 9A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2411 (3d ed. 2008)). Plaintiff's arguments fail because its legal authority address different issues than those before the Court and, in all but one of the cited cases, the courts *admitted* the evidence before assessing its value. Certainly, Plaintiff is free to argue that this type of

evidence is not compelling or that it should be given little weight, but those arguments, even if accurate, do not justify wholesale *exclusion.*

Plaintiff's motion in limine is **denied.**

II. **Defendants' Motion in Limine**

Defendants seek to prohibit Plaintiff from introducing any evidence or argument concerning its product's compliance with Food and Drug Administration ("FDA") regulations and to exclude any evidence concerning Swedish Match products not at issue in this case. For the reasons discussed below, the Undersigned **grants in part** (and **denies in part**) Defendants' Motion.

   a. FDA Compliance

In Defendants' view, because Plaintiff has no evidence of actual confusion, the legality of its DUOS cigarillos is no longer potentially relevant. Defendants point the Court to an earlier discovery Order, in which the Undersigned permitted limited discovery on this issue based on the following rationale:

> Plaintiff's Complaint alleges trademark infringement and unfair competition under 15 U.S.C. §§ 1114, 1115, and 1125, as well as one count of common law trademark infringement. [ECF No. 1]. Moreover, Plaintiff specifically alleges that Defendants' infringing conduct "damages Plaintiff as it falsely associates Plaintiff with illegal conduct." Further, in Plaintiff's Reply, it attached a letter supported by various advocacy groups to Mitchell Zeller, Director of the Center for Tobacco Products of the Food and Drug Administration (the "FDA"), complaining that Swedish Match Box's White Owl flavored cigars were introduced to the market in violation of FDA policies. [ECF No. 48].

10

> *If* Plaintiff is able to prove that Defendants' alleged use of Plaintiff's trademark caused consumers (either wholesale or individual) to confuse Plaintiff's goods with Defendants' goods *and* it could prove that Defendants' alleged reputational issues harmed Plaintiff by association, then this evidence may be relevant. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 137 (2014) (finding that the plaintiff's "alleged injuries—lost sales and damage to its business reputation—are injuries to precisely the sorts of commercial interests the [Lanham] Act protects.").

[ECF No. 63] (emphasis in original).

Plaintiff is no longer alleging relevance under its prior theory. Instead, it now claims that evidence of Swedish Match's alleged non-compliance with FDA regulations is relevant to show bad faith and to rebut Defendants' fair use defense. Although the Undersigned's prior ruling on the potential relevance of this topic was based on the premise of actual confusion and reputational harm, Plaintiff claims that the Order did not preclude the evidence's admissibility on other grounds.

Plaintiff offers little to support its contention that this evidence is relevant to the equitable principles considered when assessing a potential disgorgement award or to explain how this evidence rebuts Defendants' fair use defense. Instead, Plaintiff lists the established principles of equity and then offers a preview of its trial argument:

> Plaintiff intends to offer evidence and arguments to show that Swedish Match did not comply with FDA requirements with respect to its "DUOS" products and that their sale and marketing of "DUOS" was therefore not consistent with principles of equity . . . . Plaintiff intends to put on evidence and make arguments at trial that the Defendants never even bother to file the required substantial equivalence applications for the "DUOS" product

11

> despite express representations in Swedish Match's annual report that 'the US FDA required that cigar manufacturers submit regulatory filings for all their cigars which they wish to remain on the US market (with few exceptions) as part of the SE/PMTA process.

[ECF No. 201].

The issues with Plaintiff's relevancy argument are plentiful. In support of its argument, Plaintiff provides the specific areas where it believes that Defendants' product has fallen short of the FDA's requirements. Defendant, of course, disputes these allegations. The reason this is problematic is because there is not, nor has there been, an FDA case on this issue. Essentially, this is a private company seeking to argue why -- in *its* opinion -- another company has violated federal regulations. And it is seeking to make that argument to an entity that does not adjudicate those issues.

If the Undersigned were to permit this evidence, then it would lead to a trial within a trial on whether Defendants' products are compliant with federal regulations. This is problematic because the Undersigned has already expressed concerns over the number of witnesses and exhibits listed by each side and whether all of the evidence can be presented within the allotted timeframe. [ECF No. 213].

Moreover, in the Undersigned's view, the principles of equity do not extend that far. If the Undersigned were to accept Plaintiff's rationale, then it would essentially mean that the party seeking an equitable remedy can introduce evidence of or make argument about any ancillary issue because it may go to the opposing party's character in some

capacity.

The only case Plaintiff provides where this type of evidence has been admitted is *G&W Lab'ys, Inc. v. Laser Pharms., LLC*, No. 3:17-CV-3974-BRM-DEA, 2018 WL 3031943, at *2 (D.N.J. June 19, 2018). Plaintiff admits that the case deals with a factually distinct circumstance but asks that the Undersigned adopt the rationale. In *G&W*, the Court permitted the plaintiff to introduce evidence that the FDA had not deemed the defendant's drug to be an equivalent. *Id.* The Court found that this evidence was relevant because one of the plaintiff's claims was that the defendant's product was falsely advertised as an equivalent when there had been no FDA ruling on the issue. *Id.* These factual circumstances are far too different to justify applying the *G&W* Court's rationale.

The Undersigned previously granted Plaintiff's request to obtain limited discovery on this issue because it could be relevant to actual damages and reputational harm. Because that remedy is no longer available and Plaintiff has no evidence of actual confusion, this evidence is no longer relevant and will serve to only distract from the issues in this case. For these reasons, Defendants' request to prohibit Plaintiff from introducing evidence or making argument about Swedish Match's DUOS cigarillos' alleged non-compliance with the FDA is **granted**.

    b. Evidence Concerning Swedish Match's Other Products

Defendants next seek to prohibit Plaintiff "from referencing or introducing

13

arguments or evidence related to products that are not at issue in this case." [ECF No. 198]. Although Defendants' initial request seeks a broad form of relief, they identify only a few documents produced in discovery that they allege should be excluded. Plaintiff argues against the exclusion of the identified documents and against the broader request.

The specific documents Swedish Match references all concern allegations that Swedish Match's other products violate FDA regulations. The alleged illegality of Swedish Match's other products is even more untethered to the facts of this case than the alleged illegality of the DUOS cigarillos. Thus, the Undersigned **grants** Defendants' request to the extent it concerns any evidence discussing whether Swedish Match's other, non-DUOS products comply with FDA regulations.

Plaintiff also argues against Defendants' sweeping request to exclude any reference to its other products. Plaintiff alleges that these products are relevant because they demonstrate Swedish Match's "naming conventions" and the history of terms used in association with and below its WHITE OWL brand. According to Plaintiff, this evidence is also relevant to rebutting Defendants' fair use defense and to establish that the public would attribute Plaintiff's DUO cigars and Defendants' DUOS cigarillos to the same source, which is one of the likelihood of confusion factors. The Undersigned agrees with Plaintiff, and Defendants have made no specific argument on this issue. Therefore, the Undersigned **denies** Defendants' request to exclude all evidence concerning Swedish

Match's other products.

### III. Conclusion

Based on the foregoing, the Undersigned Orders as follows:

(1) Plaintiff's Motion in Limine is **denied**;

(2) Defendants' Motion in Limine is **granted in part**. Plaintiff may not present any evidence or argument concerning Swedish Match's compliance with FDA regulations. Defendants' Motion in Limine is **denied** in all other respects.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on June 7, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All Counsel of Record