UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:21-cv-21714-GOODMAN

[CONSENT]

GUANTANAMERA CIGARS COMPANY,

                    Plaintiff,

v.

SMCI HOLDING, INC., et al.,
                    Defendants.
_____/

ORDER ON PLAINTIFF'S MOTION FOR NEW TRIAL AND/OR
RECONSIDERATION OF RULING ON *IN LIMINE* MOTION

Following a bench trial and a substantive ruling in this federal trademark infringement lawsuit, Plaintiff Guantanamera Cigars Company ("GCC" or "Plaintiff") filed [ECF No. 232] a motion for new trial and/or for reconsideration (of an Order granting [ECF No. 269] a motion *in limine*). Defendants SMCI Holding, Inc., Swedish Match North America, LLC, Swedish Match USA, Inc. (collectively, "Swedish Match"), Sam's West, Inc. ("Sam's Club"), and Costco Wholesale Corporation ("Costco") (collectively, "Defendants") filed a response and GCC filed a reply [ECF Nos. 323, 324].

At bottom, GCC argues that an *in limine* ruling (preventing Plaintiff from pursuing a newly-disclosed reverse-confusion theory at trial) was "actually a premature motion for judgment as a matter of law." [ECF No. 322, p. 2]. According to GCC, the Court should have instead granted a motion for judgment as a matter of law at the close of Plaintiff's case *if it*

determined that no evidence supported the reverse-confusion theory.

But the Court's Order [ECF No. 269] granting Defendants' motion *in limine* was not based on a determination that there was no evidence or insufficient evidence to support a reverse-confusion theory. Instead, the ruling was based on Plaintiff's untimely disclosure of a new theory of trademark infringement and the undue prejudice which Defendants would have sustained if Plaintiff was permitted to pursue a "surprise" theory after the close of fact and expert witness discovery. Plaintiff also suggests that the Order granting the *in limine* motion was based on an incorrect determination that it waived the reverse-confusion theory. But the Order was not based on waiver. Instead, as noted, it was based on late disclosure and undue prejudice.

Plaintiff also contends that the facts underlying a reverse-confusion theory are the same as those informing a forward-confusion theory -- and that only the *interpretation* of those same facts vary. But that is not an on-point perspective. Had Defendants known about the reverse-confusion theory and/or been provided with fact and expert discovery about it, then they could have timely obtained their own expert (to help analyze and interpret the facts) and filed a summary judgment motion on the theory.

In order to evaluate Plaintiff's motion, the Court needs to discuss *Wreal, LLC v. Amazon.com*, 38 F.4th 114 (11th Cir. 2022), and the post-*Wreal* procedural developments which followed here. GCC, which did not allege a reverse-confusion theory in its Complaint, contends that *Wreal* created a huge shift in how trademark infringement cases are evaluated

in the Eleventh Circuit when a reverse-confusion theory is being used.

*Wreal,* which was all about a reverse-confusion theory and which had a complaint expressly relying on a reverse-confusion theory, was decided on June 28, 2022. But Plaintiff did not disclose its intent to use that theory until February 1, 2023, long after expiration of the fact and expert disclosure and discovery deadlines. So Defendants were, for all practical purposes, ambushed by the late disclosure, and they filed an in *limine* motion to prevent undue prejudice.

**Factual and Procedural Background**

*Wreal*

Wreal, LLC filed its complaint [ECF No. 1, Case No. 1:14-cv-21385-JAL] in the Southern District of Florida on April 17, 2014. Wreal streams on-demand content to adult audiences through a dedicated set-top device under the brand name FyreTV® and via the website FyreTV.com®, for which it holds federally registered trademarks. It sued Amazon.com based on Amazon's use of a dedicated set-top device called "Fire TV." The complaint alleges that Amazon's use of the "Fire TV" name infringes upon Wreal's FyreTV® and FyreTV.com® trademarks.

Wreal's complaint expressly invokes and explains the "reverse-confusion" theory. Paragraph 52 alleged: "This type of confusion is called "reverse confusion," meaning that consumers are likely to associate, or have associated, Wreal's FyreTV® and FyreTV.com® with Amazon, rather than Wreal." Paragraphs 60, 68, and 90 repeat the reverse confusion

allegation.

The District Court in *Wreal* adopted the Magistrate Judge's report and recommendations and granted summary judgment for Defendants [ECF No. 381]. The legal discussion began with the following: "Wreal alleges a **reverse-confusion theory** of trademark infringement." *See id.* at ¶ 60. "**Reverse confusion** occurs when a large junior user saturates the market with a trademark similar or identical to that of a smaller, senior user. In such a case, the junior user does not seek to profit from the good will associated with the senior user's mark." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992) (emphasis added). The injury results to the senior user because

> [t]he public comes to assume that the senior user's products are really the junior user's or that the former has become somehow connected to the latter. The result is that the senior user loses the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.

*Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 964 (6th Cir. 1987).

Wreal appealed, and the Eleventh Circuit reversed and remanded in a June 28, 2022 published opinion. 38 F.4th 114 (11th Cir. 2022). The opinion began as follows: "This appeal asks us to address the doctrine of reverse-confusion trademark infringement. Reverse confusion is not a standalone claim in trademark law; rather, it is a theory of how trademark infringement can occur. In reverse-confusion cases, the plaintiff is usually a commercially smaller, but more senior, user of the mark at issue. The defendant tends to be a commercially larger, but more junior, user of the mark. The plaintiff thus does not argue that the defendant

4

is using the mark to profit off plaintiff's goodwill; instead, the plaintiff brings suit because of the fear that consumers are associating the plaintiff's mark with the defendant's corporate identity. It is this false association and loss of product control that constitutes the harm in reverse-confusion cases." *Id.* at 121.

The *Wreal* Court explained that determining likelihood of confusion in forward-confusion cases involves the application of a well-established seven-factor test but then noted that it had never before had the opportunity to delineate how this seven-factor test applies in reverse-confusion cases. Because there are "several important differences in how the seven likelihood-of-confusion factors apply in reverse-confusion cases versus forward-confusion cases," the Court applied those factors -- including the important differences -- and held that the district court should have allowed the case to proceed to trial.

Significantly, the Court held that "[b]ecause both the *harm and the theory* of infringement in a reverse-confusion case *differ* from what is claimed in a forward-confusion case, the *analysis and application* of the seven likelihood-of-confusion factors *differ as well." Id.* at 127 (emphasis added). The Court noted that the harms which can occur in a reverse-confusion case are "varied" and gave an illustrative example: "consumers may come to believe the smaller, senior user of the mark is itself a trademark infringer, *see Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 490 (2d Cir. 1988), or that the defendant's use of the mark diminishes the value of the plaintiff's mark as a source indicator, *see Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 301–02 (3d Cir. 2001)." *Id* at 128.

Moreover, the *Wreal* Court then relied upon *Ameritech, Inc.*, 811 F.2d at 964 for the rule that, in a reverse confusion case, "[t]he public comes to assume the senior user's products are really the junior user's or that the former has become somehow connected to the latter. The result is that the senior user loses the value of the trademark -- its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets." *Id.*

The appellate court also held that "the rule of reverse confusion is **highly fact-specific** and depends for its application on the presence of a **critical mass of key facts**." *Id.* (emphasis added).

The *Wreal* Court then analyzed the seven factors to see whether there are "important differences in how other factors are analyzed and applied that stem from the fact that the **harm and the theory** of infringement *differ* between forward and reverse confusion." *Id.* at 140 (emphasis added).

The Court determined that several of the seven factors must be analyzed and applied differently in a reverse-confusion case and that this result arises "from the fact that the harm and the theory of infringement differ between forward and reverse confusion." *Id.* Specifically, the Court held that the following factors (of the seven) must be applied differently in a reverse-confusion case:

**Distinctiveness of the Mark**: In a "typical" forward-confusion case, this factor focuses only on the conceptual strength of the plaintiff's work. But in a reverse-confusion

case, the conceptual strength of the plaintiff's mark is "necessarily less important to the analysis, which means the district court "should consider both the conceptual strength of the plaintiff's mark and the relative commercial strength of the defendant's mark." *Id*. at 129.

**Similarity of the Marks:** The Court held that the similarity-of-the-marks analysis is the same in both forward-confusion and reverse-confusion cases, with one exception. "In forward-confusion cases -- where a commercially superior plaintiff with a strong conceptual mark sues a defendant for attempting to profit off its goodwill -- the presence of a housemark is indeed likely to *dispel* confusion in ordinarily prudent consumers." *Id*. at 131 (emphasis by Court). "But in reverse-confusion cases, this presumption is reversed; because the harm is false association of the plaintiff's mark with the defendant's corporate identity, the defendant's use of a housemark alongside the mark is more likely to *cause* confusion." *Id*.

**Similarity of the Products:** The analysis is the same, regardless of the theory of confusion.

**Similarity of Sales Outlets and Customer Bases:** The analysis of this factor is the same in forward confusion and reverse-confusion cases.

**Similarity of Advertising:** The inquiry is the same in both types of cases.

**Defendant's Intent:** In forward-confusion cases, this factor asks whether the defendant adopted the plaintiff's mark with the intention of deriving a benefit from the

plaintiff's business reputation. But reverse-confusion cases are different, because the concern is that customers will purchase the senior user's goods under the mistaken impression that they are getting the goods of the junior user. In other words, that "the junior user's advertising and promotion so swamps the senior user's reputation in the market that customers are likely to be confused into thinking that the senior user's goods are those of the junior user." *Id.* at 136.

Noting that different circuits have "responded to this problem in varying ways," the *Wreal* Court adopted a modified version of the intent factor for reverse-confusion cases. Specifically, intent to deceive is not a prerequisite to establish intent in reverse-confusion cases, as it is in forward-confusion cases. The Court explained that indicia of intent can come from a wide variety of sources, including a more-generalized intent to obtain market saturation or to proceed with the adoption of a mark in circumstances where the defendant had constructive knowledge of the plaintiff's mark. Because "the **facts** of each case **will vary**," the Court held that district courts should "accord the intent factor **whatever weight it deserves** under the circumstances." *Id.* (emphasis added).

**Actual Confusion**: In reverse-confusion cases, evidence of forward confusion will usually be probative but even more relevant is direct evidence of *reverse* confusion -- evidence that consumers of the plaintiff's more senior mark became confused as to its source following the launch of the defendant's more junior mark. Moreover, in practical terms, because a reverse confusion theory depends on market saturation by the defendant's mark,

a reliable survey "cannot be run in a reverse confusion case prior to the junior user's saturation of the market with its mark because, until that time, consumers have not been exposed to the relatively large advertising and promotion of the junior user that is the hallmark of a reverse confusion case." *Id*. at 137-38 (emphasis in original).

On February 25, 2022, Plaintiff filed [ECF No. 166] its motion for summary judgment. The motion did not mention the concept of reverse confusion; it merely reviewed the seven factors used in trademark infringement cases. On the same date, Defendants filed [ECF No. 168] their own summary judgment motion. It, too, did not discuss a reverse-confusion theory. The Court issued an Order [ECF No. 195] denying in large part both summary judgment motions.

On June 24, 2022, a few days before *Wreal* was issued, Defendants filed [ECF No. 125] an unopposed motion to continue the trial (which was specially set and scheduled to start on June 27, 2022) because three significant witnesses, including an expert witness, were ill and could not attend trial. The Court granted [ECF No. 236] the motion and rescheduled [ECF No. 244] the special set civil bench trial for March 6, 2023. The trial scheduling order noted that the deadlines for fact and expert discovery had already expired.

On February 10, 2023, approximately a few weeks before trial was to begin, Defendants filed [ECF No. 256] a motion for leave to file a motion *in limine,* seeking to preclude Plaintiff from introducing any evidence, testimony or arguments based on "its new legal theory of reverse-confusion trademark infringement." The motion noted that the

grounds for seeking the exclusion did not arise until February 1, 2023, when Plaintiff disclosed its new legal theory for the first time through proposed edits to the Joint Pretrial Stipulation, which was due on February 20, 2023. The motion also pointed out that the Parties' original, filed Joint Pretrial Stipulation (from June 17, 2022, ECF No. 227) did not include the theory.

The motion for leave attached the proposed motion *in limine.* The substantive motion noted that the case had been pending since May 4, 2021 but that Plaintiff had never asserted, directly or implicitly, its intent to pursue a reverse-confusion theory of liability. It noted that discovery had closed, depositions had been taken, expert reports had been completed and summary judgment motions had been filed and decided -- all without mention of a reverse-confusion theory.

Moreover, even when Plaintiff finally disclosed its intent to use a reverse-confusion theory, it did not do so *expressly.* It did not use the actual term "reverse confusion" in the edits to the Pretrial Stipulation. Instead, it added in a *description* of the reverse-confusion theory in the section for a short and concise statement of the case by each party:

> Defendants have much **greater economic power** than Plaintiff. That economic power was used to **saturate the market with promotion** of a confusingly similar trademark, **overwhelming the marketplace power and value** of Plaintiff's incontestable registered 'DUO' trademark. The result of Defendants' infringement is that Plaintiff lost the value of its incontestable registered trademark -- its product identity, corporate identity, control over its goodwill and reputation, and ability to move new markets.

[ECF No. 256-2, p. 15 (emphasis added)].

This new language which Plaintiff added to the Pretrial Stipulation did *not* come from the Complaint, which alleged only a forward-confusion theory. Technically, the Complaint did not use the term forward confusion or reverse confusion. **But the only allegations it made in the Complaint about confusion were with language concerning a *forward-confusion theory.***

Specifically, paragraph 26 of the Complaint alleges that "the use of Defendants' 'DUOS' trademark in connection with cigars is likely to create consumer confusion. Specifically, consumers may be confused as to the source, sponsorship or affiliation of cigars bearing Plaintiff's registered 'DUO' trademark and Defendants' infringing 'DUOS' trademark." Similarly, paragraphs 44, 49 and 54 of the Complaint allege that "Defendants adopted and are using a mark that is the same or confusingly similar to Plaintiff's 'DUO' mark such that consumers would likely confuse the two marks and the source of sponsorship of the goods sold thereunder."

These are allegations for a forward-confusion theory. The allegations about a reverse-confusion theory, such as the language about market saturation and power, were asserted for the first time by Plaintiff in its edits to the Pretrial Stipulation, and they appear nowhere in the Complaint.

The motion highlighted the fact that the record was devoid of any mention of reverse confusion and it listed myriad submissions which did not refer at all to a reverse-confusion theory: Plaintiff's Complaint; Plaintiff's Summary Judgment Motion; the Original Joint

Pretrial Stipulations; Pretrial Conferences and Hearings; Plaintiff's Interrogatory Responses and Admissions; Plaintiff's Discovery Requests; and Plaintiff's four-time-Amended Initial Disclosures.

The motion also points out that reverse-confusion theory is not new law and noted that *Wreal* cited a 1992 case explaining the classic type of reverse-confusion infringement case.

After summarizing the circumstances demonstrating that Plaintiff never alleged a reverse-confusion theory, the motion asserted that allowing Plaintiff "to offer its untimely disclosed theory at trial would unduly prejudice Defendants[,] who have spent significant time and resources addressing the theories that GCC timely disclosed." [ECF No. 256-2, p. 10].

Defendants also explained that absolutely no discovery was taken on a reverse-confusion theory, Plaintiff never identified any witnesses or documents it would use to support such a theory and Plaintiff never articulated any harm it supposedly suffered as a result of conduct causing reverse-confusion-type damages. [ECF No. 268, p. 1].[1]

---

[1]    Federal Rule of Civil Procedure 26(e)(1) requires that:

A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must **supplement** or correct its disclosure or response:

(A)    in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made

Plaintiff filed [ECF No. 258] an opposition response to the motion for leave, but the Court permitted [ECF No. 259] Defendants to file the motion, which they did [ECF No. 261]. Defendants filed a Reply [ECF No. 268] in which they took issue with Plaintiff's contention that Defendants were on notice of its intent to rely on the reverse-confusion theory analyzed in *Wreal*. Defendants then explained that Plaintiff cited a handful of inadmissible settlement discussion emails which "passively mention *Wreal* without any relevant or substantive explanation." [ECF No. 268, p. 7]. Defendants then discuss the emails in chronological order:

1.      A June 29, 2022 email from GCC's attorneys to two of Defendants' attorneys attaching the *Wreal* decision and stating (in full): "See attached. We are always open to renewed settlement discussions." *Id.* at 2. **GCC did not mention its intent to pursue reverse confusion, and it did not discuss *Wreal's* treatment of the seven factors in a reverse-confusion case.**

2.      A partial copy of a June 30, 2022 email exchange between counsel regarding the rescheduling of trial, wherein [Plaintiff's] attorney Herrera states (in full): "The 11th's recent *Wreal v. Amazon* decision should cause your client to **reconsider settlement** so that schedules are no longer an issue." *Id.*, at 3 (emphasis added). **GCC did not mention its intent to pursue reverse confusion, and it did not discuss *Wreal's* treatment of the seven**

_____

known to the other parties during the discovery process or in writing; or

(B)      as ordered by the court.

Fed. R. Civ. P. 26(e)(1) (emphasis added).

**factors in a reverse-confusion case.**

3.      A partial copy of a December 13, 2022 email from GCC's attorneys to Defendants' attorneys, under an "Inadmissible Settlement Communication" header added by GCC's attorneys, stating:

> We remain confident in the merits of the case and believe that recent decisions in the Eleventh Circuit and the Southern District of Florida have strengthened our position. *See Wreal, LLC v. Amazon.com*, 38 F.4th 114 (11th Cir. 2022) (reversing summary judgment for the defendant with considerable similarity to the case at hand and in which Magistrate Judge Goodman was the presiding Magistrate Judge).

*Id*. at 4-5. **GCC did not mention its intent to pursue reverse confusion (nor did it discuss the fact that *Wreal* analyzed the seven factors under a reverse-confusion theory).** In addition, it did not explain why *Wreal* supposedly had "considerable similarity" to the instant case.

4.      A partial copy of a January 27, 2023 email exchange between GCC's attorneys and Defendants' attorneys, where Attorney Herrera stated: "Certainly your client has provided you with greater settlement authority [REDACTED], and subsequent case law such as *Wreal v. Amazon*." *Id*. at 6. **GCC did not mention its intent to pursue reverse confusion (nor did it discuss the fact that *Wreal* analyzed the seven factors under a reverse-confusion theory).**

5.      A partial copy of a February 7, 2023 email exchange between GCC's attorneys and Defendants' attorneys showing GCC's response to Defendants' objection to GCC's untimely disclosure of a reverse-confusion theory in editing the Pretrial Stipulation (GCC

14

omitted Defendants' objection from ECF No. 258-1), where GCC stated:

> In any event, our statement of the case is consistent with *Wreal, LLC v. Amazon.com*, 38 F.4th 114 (11th Cir. 2022) which notices that "[r]everse confusion is not a standalone claim in trademark law; rather it is a theory of how trademark infringement can occur." The language added to Plaintiff's statement of the case is adapted from the *Wreal* case[.]

*Id.* at 7. **The February 7, 2023 email is the _first time_ GCC explicitly stated its intent to pursue a reverse-confusion theory, and was the catalyst that led to Defendants' Motion for Leave to File a Motion *in Limine* [ECF No. 256], filed a few days later**.

The Court granted Defendants' motion *in limine* because: (1) Plaintiff never raised the theory in its Complaint; (2) until after the close of discovery, Plaintiff never asserted or implied that it would rely on a reverse-confusion theory; (3) Plaintiff did not disclose this new theory until after the completion of fact witness depositions, expert witness reports, and expert discovery; (4) Plaintiff never alleged a reverse-confusion theory in its summary judgment motion; (5) none of Plaintiff's discovery requests targeted a reverse-confusion theory; (6) the Undersigned rejected Plaintiff's argument that its mention of *Wreal, LLC v. Amazon.com*, 38 F.4th 114 (11th Cir. 2022) in a few emails put Defendants on notice of its intent to pursue a reverse-confusion theory because those cryptic references were part of settlement negotiations and, most importantly, never mentioned an intent to pursue the theory; and (7) permitting Plaintiff to pursue a new theory now, at this late date, would unduly prejudice Defendants. [ECF No. 269].

In addition to relying on these seven reasons, the Order also provided the following

grounds to support the ruling:

> Defendants' expert opinions address the confusion theories timely articulated by Plaintiff -- and they did not include reverse confusion. Given the late and untimely notice, there is inadequate time for Defendants' experts to opine on the new theory, especially because Plaintiff has not alleged the specifics of the new theory or suggested what evidence would, or could, support the new theory. Therefore, Defendants would be, in effect, ambushed at trial with a new theory. That type of scenario is contrary to contemporary notions of discovery and the purposes underlying discovery rules.

*Id*.

After this written ruling, Plaintiff argued the issue again in oral argument, but the Court again denied Plaintiff's position. The instant motion is therefore the *third* time Plaintiff is trying to assert its new reverse-confusion theory.

In their motion for new trial and/or for reconsideration, Plaintiff asks for four types of relief:

1.    Reconsidering the Order granting the *in limine* motion;

2.    Amending the Court's Findings of Fact and Conclusions of Law [ECF No. 314] by applying the seven factors as *Wreal* said would be appropriate in a reverse-confusion case;

3.    Granting a new trial, which it says would require the Parties to submit new proposed Findings of Fact and Conclusions of Law addressing reverse confusion under *Wreal;* and/or

4.    Reconsidering the first, second, fourth, fifth and seventh likelihood of confusion factors under a pre-*Wreal* likelihood of confusion analysis.

**Applicable Legal Standards and Analysis**

"[I]n the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy that is employed sparingly." *Gipson v. Mattox*, 511 F. Supp. 2d 1182, 1185 (S.D. Ala. 2007). A motion to reconsider is "appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (Hoeveler, J.) (citation omitted).

"Simply put, a party may move for reconsideration only when one of the following has occurred: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1247 (S.D. Ala. 2008) (quoting *Vidinliev v. Carey Int'l, Inc.*, No. CIV.A. 107CV762-TWT, 2008 WL 5459335, at *1 (N.D. Ga. Dec. 15, 2008)). However, "[s]uch problems rarely arise and the motion to reconsider should be equally rare." *Z.K. Marine Inc.*, 808 F. Supp. at 1563. Certainly, if any of these situations arise, a court has broad discretion to reconsider a previously issued order. Absent any of these conditions, however, a motion to reconsider is not ordinarily warranted.

> To prevail on a motion to reconsider, the moving party must demonstrate why the court should reverse its prior decision by setting forth facts or law of a strongly convincing nature. A motion to reconsider should not be used as a vehicle 'to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'

*Johnson v. Fla. Dep't of Corr.*, No. 21-CV-61325, 2021 WL 4356058, at *1 (S.D. Fla. Sept. 24, 2021)(quoting *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005)).

Significantly (given that Plaintiff was seeking to pursue a new theory of trademark infringement confusion), the Eleventh Circuit has also stated that "a motion to reconsider should not be used by the parties to set forth **new theories** of law." *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir.1997) (emphasis added); *see also Russell Petroleum Corp. v. Environ Prod., Inc.*, 333 F. Supp. 2d 1228, 1234 (M.D. Ala. 2004) (relying on *Mays* to deny motion to reconsider where movant advanced **new theories of law**).

Plaintiff relies on *Wreal* in support of its position. However, *Wreal* is not an intervening change in law that occurred in the time since the Court granted Defendants' motion *in limine*. Nor was *Wreal* an intervening change in law at the time of its decision. [ECF No. 268, pp. 1-2]. The theory of reverse confusion existed long before *Wreal* was decided.

*Wreal* clarified the analysis for a few of the likelihood of confusion factors for reverse confusion. Plaintiff could have (but did not) clearly and unequivocally allege a reverse-confusion theory in its Complaint, like the plaintiff did in *Wreal.* Plaintiff attempts to argue that it should have been permitted to pursue its newly asserted reverse-confusion theory (at the last minute) because it *generally* alleged a likelihood of confusion in its Complaint, and because it says the facts underlying the forward and reverse confusion analyses are unchanged. [ECF. No. 322, pp. 7-8].

18

*Wreal* does not support Plaintiff's position that it adequately raised reverse confusion to put Defendants on notice. In *Wreal,* even though the Eleventh Circuit acknowledged that reverse confusion is not a standalone claim, the appellate court did not simply allow the plaintiff to pursue a reverse-confusion theory because of a general allegation of a likelihood of confusion in the complaint. 38 F.4th at 121. Instead, as this Court noted, the case was "all about reverse confusion." [ECF No. 266]. The plaintiff in *Wreal* specifically alleged facts about "the fear that consumers [were] associating the plaintiff's mark with the defendant's corporate identity." 38 F.4th at 121; *see also* [ECF No. 268, pp. 1-3 (noting specific references to reverse confusion in the complaint)]. Here, Plaintiff did not raise the theory of reverse confusion until approximately two weeks before trial. [ECF No. 261, pp. 2-4]. As such, Plaintiff did not "waive the application of the correct law" because this case was never about reverse confusion. *See Wreal,* 38 F.4th at 129.

Plaintiff argues that a few cryptic references to *Wreal* in a few emails were sufficient to put Defendants on notice that it was actually planning to use a reverse-confusion theory at trial. The flaw in this argument is illustrated by what Plaintiff did *not* say or do in the emails:

1. It did not say that *Wreal* was about reverse confusion.

2. It did not say that it planned to use a reverse-confusion theory.

3. It did not say or imply that it would be seeking to amend the Complaint to clearly articulate a reverse-confusion theory.

4.      It did not say or suggest that it would be amending the Pretrial Stipulation (drafted many months ago, before the trial was continued) to disclose its plan to use a reverse-confusion theory.

5.      It did not indicate that additional discovery might be needed to address a new reverse-confusion theory.

6.      It did not indicate that it would be supplementing earlier-provided discovery responses, as required by Fed. R. Civ. P. 26(e).

7.      It did not indicate that Defendants might need to seek an enlargement of discovery in order to retain an expert witness on the reverse-confusion approach.

Plaintiff's succinct references to *Wreal* in a few settlement-related emails seem intentionally vague and crafted to avoid discussion of an intent to present an entirely new theory at trial. If Plaintiff had been confident in its ability to pursue a significantly different theory after the close of discovery, then it likely would have emphasized the importance of the case and the Eleventh Circuit's newly-announced method of analyzing the traditional factors in a reverse-confusion case.

For example, the comments below are illustrations of how Plaintiff *could have* flagged the new developments in *Wreal* in June 2022 in an email to Defendants:

a.      "I am enclosing the Eleventh Circuit's new decision in *Wreal v. Amazon*. It substantially changes the law in trademark infringement cases because it holds that the analysis of the standard factors is different for reverse-confusion cases. If we do not reach

an acceptable settlement with your clients in two weeks, then we will file a motion, asking for leave to amend the Complaint and to expressly permit a reverse-confusion theory (or to enlarge discovery to permit the Parties to engage in additional discovery, including expert discovery."

b.   "I assume that you are aware of the Eleventh Circuit's new opinion in *Wreal v. Amazon.* But I am attaching a copy anyway. Please review this with your clients immediately and get back to me with a new settlement proposal. Although we are confident in our current theory, we believe the reverse-confusion theory at issue in *Wreal* may be stronger and we urge your clients to objectively assess how they will defend that theory."

c.   "The Eleventh Circuit just issued a new opinion in which it crafted a new legal analysis for reverse-confusion cases. We will be aggressively pursuing that theory if we do not settle with your clients. If necessary, we will file whatever motions might be required or advisable to tee up this issue so that we may present it at trial."

But Plaintiff's detail-free references to *Wreal* were not remotely similar to the illustrations. To the contrary, they provided no notice about what the case was even about and similarly did not even hint at a plan to use the theory at trial.

Given the fact that the Eleventh Circuit adopted a new method for evaluating reverse-confusion cases, this failure to discuss any relevant aspect of the case was likely not an inadvertent oversight. The Undersigned is not convinced by Plaintiff's argument. *Cf. Aspen Am. Ins. Co. v. Tasal, LLC*, No. 6:20-cv-875-Orl-40DCI, 2021 WL 4935769, at *11 (M.D. Fla. Feb.

21

5, 2021) (concluding that the plaintiff's invocation of a new affirmative defense after the close of discovery and expiration of the dispositive motion deadline "looks like a straight ambush" of the defendant, and explaining that "[a]n isolated reference in seven lines of deposition testimony does not constitute fair notice" of an attempt to add a new affirmative defense).

Plaintiff also cites to *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 933-34 (9th Cir. 2017) to support its position that it did not waive the theory of reverse confusion. [ECF No. 322, pp. 9-10]. Although the Ninth Circuit in *Marketquest* held that the district court was correct to consider reverse confusion as the case proceeded, this was because reverse confusion was "compatible with the theory of infringement alleged in the complaint[.]"*Id.*[2]

Specifically, the plaintiff in *Marketquest* alleged both that the defendant was a "larger, more widely-known entity" and that the defendant "acquired some smaller promotional products companies[.]" *Id.* at 933-34. Here, Plaintiff made no such allegations that Defendants had a history of acquiring smaller companies. Indeed, Plaintiff had not even hinted at the possibility of relying on a reverse-confusion theory until a few days before trial.

In addition, the plaintiff in *Marketquest* alleged instances of actual reverse confusion in its motion for a preliminary injunction, and the district court's orders denying the

---

[2]    The 11th Circuit in *Wreal* adopted only the *Marketquest* approach to the intent factor in a reverse-confusion analysis.

preliminary injunction motion and granting summary judgment recognized the reverse-confusion theory. Moreover, the court there held that the plaintiff "should not have been prevented from exploring possible instances of reverse confusion during discovery," *Id*. at 933-34 -- but no such restriction was present here, as Plaintiff never sought that type of discovery at all.

*Firebirds Int'l, Inc. v. Firebird Rest. Grp., LLC*, No. 3:17-CV-2719, 2019 U.S. Dist. LEXIS 141785, *10 (N.D. Tex. Aug. 21, 2019) concerned whether an expert's survey questions could be used to support a forward-confusion theory, not whether a plaintiff adequately pleaded forward or reverse confusion. [ECF No. 322, pp. 7-14]. However, *Firebirds* held that "a plaintiff alleging trademark infringement is not required to specify forward or reverse confusion under the Lanham Act," and Plaintiff therefore contends that its failure to pinpoint in the Complaint which theory of confusion it is relying on is not problematic (and should not be a reason to prevent it from pursuing the reverse-confusion theory at trial).

But none of the cases Plaintiff cites support the right of a plaintiff to prejudicially raise a new legal theory two weeks before trial. The plaintiff in *Wreal* specifically alleged reverse confusion in the complaint. 38 F.4th at 121; [ECF No. 268, pp. 1-3]. The plaintiff in *Marketquest* alleged reverse confusion in its motion for a preliminary injunction. 862 F.3d at 933. *Firebirds* concerned reverse confusion during expert discovery. 2019 U.S. Dist. LEXIS 141785, at *10. Likewise, the plaintiff in *Dorpan, S.L. v. Hotel Melia, Inc.*, 728 F.3d 55, 65, n.12 (1st Cir. 2013) argued for reverse confusion "from the beginning." In addition, the plaintiff

in *THOIP v. Walt Disney Co.*, 736 F. Supp. 2d 689, 694 (S.D.N.Y. 2020) raised reverse confusion at the summary judgment phase and the court simply reopened discovery, while the plaintiff in *Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 296 (S.D.N.Y. 2001) raised reverse confusion at the close of expert discovery and the court also concluded that the complaint could read to encompass both forward-confusion and reverse-confusion theories.

As noted, Plaintiff is also seeking, in the alternative, but for the same reasons, a new trial. "A motion for a new trial is addressed to the sound discretion of the trial court, and a decision to deny a new trial motion will not be reversed absent an abuse of discretion." *United States v. Reed*, 887 F.2d 1398, 1404 (11th Cir. 1989) (citation omitted). "A motion for a new trial must be viewed with 'great caution." *Id.*

Plaintiff argues that the Court's Order excluding the new reverse-confusion theory had a "chilling effect" on the evidence Plaintiff introduced at trial. But Plaintiff failed to cite to even a single item of evidence that it would have presented which would be different from the evidence already considered by the Court. *See* [ECF No. 322, p. 21].

Regardless of which specific theory it is advancing, Plaintiff's motion is based on its argument that the Court lacked authority to grant the *in limine* motion and exclude evidence concerning the "new" theory issued by the Eleventh Circuit seven months earlier. As noted earlier, though, the Order excluding evidence of the new legal theory was based on untimeliness of the notice and the undue prejudice it would cause Defendants if the motion were denied, not simply that the Complaint failed to disclose which of the two theories

Plaintiff would be using (or if it would be using *both* theories). *See, e.g., Lan Li v. Walsh,* No. 16-81871-CIV, 2022 U.S. Dist. LEXIS 30257, *18-19 (S.D. Fla. Feb. 18, 2022) (holding that "raising a new legal claim or theory for the first time at" a late stage (there, the summary judgment stage) is "improper."); *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1313 (11th Cir. 2004) (same); *In re Zantac (Ranitidine) Prods. Liab. Litig.,* No. 20-MD-2924, 2021 U.S. Dist. LEXIS 122725, *47 (S.D. Fla. June 30, 2021) ("The introduction of new legal theories at a later stage of proceedings amounts to undue prejudice.").

Moreover, trial courts have broad discretion to exclude late-disclosed witnesses and evidence. *Watkins v. Pinnock,* 802 F. App'x 450 (11th Cir. 2020) (district court did not abuse its discretion in precluding plaintiff from using several late-disclosed witnesses who were disclosed months after discovery deadline expired and two weeks before the scheduled trial date.); *Mitchell v. Ford Motor Co.,* 318 F. App'x 821 (11th Cir. 2009) (trial court did not abuse discretion in striking expert report and testimony because he did not disclose the necessary scientific bases for his opinion in a timely fashion.); *see also Deakins v. Wal-Mart Stores East LP,* No. 21-80935, 2022 WL 1642954 (S.D. Fla. Feb. 16, 2022) (denying plaintiff's motion to amend witness and exhibit list after concluding that plaintiff did not act diligently).

By way of summary, Plaintiff's failure to seek leave to amend its Complaint to add a specific reverse-confusion theory is not the sole or primary ground for granting Defendants' motion *in limine.* Instead, it is Plaintiff's last-minute, vaguely-referenced edit to the Pretrial Stipulation, with language indirectly indicating its new legal theory, combined with its

failure to supplement discovery responses and witness/document disclosures, and Defendants' inability to adequately defend the eleventh-hour theory (because, for example, the expert witness deadline had expired), which caused the Court to grant the *in limine* motion. In other words, it was the **overall** undue prejudice to Defendants, caused by an inexplicable delay (of more than seven months from the issuance of *Wreal),* which militated in favor of an Order preventing Plaintiff from using ambush tactics.

As *Wreal* explained, there are "several **important** differences" in how the seven likelihood-of-confusion factors apply in reverse-confusion cases, as opposed to forward-confusion cases. 38 F.4th at 121 (emphasis supplied). So, if permitted, Plaintiff's belatedly-mentioned plan to add a reverse-confusion theory at the last minute would undoubtedly have created significant prejudice because Defendant would not have the relevant discovery nor the necessary expert testimony to address the several important differences. Federal courts routinely exclude evidence when a party fails to comply with its discovery-supplementation obligations under Fed. R. Civ. P. 26(e). *See e.g., Dorvil v. Nationstar Mortgage LLC*, 852 F. App'x 468 (11th Cir. 2021) (affirming district court's order granting motion *in limine* to strike plaintiff's testimony because he failed to timely supplement his initial disclosures); *Greater Hall Temple Church of God v. So. Mut. Ins. Co.,* 820 F. App'x 915 (11th Cir. 2020) (affirming district court's decision to exclude expert opinion because Pplaintiff failed to supplement its initial disclosures).

Finally, Plaintiff's alternative argument that the Court evaluate again the factors

under the forward-confusion approach is insufficient to justify reconsideration, as it is merely an attempt to relitigate old matters.

As stated by this Court:

It is an improper use of the motion to reconsider to ask the Court to rethink **what the Court already thought through--rightly or wrongly.** The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

*Z.K. Marine Inc.*, 808 F. Supp. at 1563 (Hoeveler, J.) (cleaned up) (emphasis added).

## Conclusion

For the reasons outlined above, the Undersigned **denies** Plaintiff's motion.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on August 11, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record

27